UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EDWARDS TERRY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:16CV01268 AGF |
| ) | |
| JEROME FIELDS and KEITH ) | |
| LENHARTH, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Plaintiff Edwards Terry claims in this action, filed under 42 U.S.C. § 1983, that Defendants, jail officials at the jail where Plaintiff was a pre-trial detainee, violated Plaintiff's constitutional rights by their deliberate indifference to a serious risk of harm when they failed to protect Plaintiff from a sexual assault by another inmate. The matter is before the Court on Defendants' motion for summary judgment. For the reasons set forth below, the motion for summary judgment on the merits will be denied, but the action will be dismissed without prejudice for Plaintiff's failure to exhaust administrative remedies, as required by the Prison Litigation Reform Act.

## BACKGROUND

Plaintiff alleged in his pro se complaint that on February 11, 2016, he told Defendant Keith Lenharth that an inmate named Rambo told Plaintiff "how fine [his] ass was and on more than one occasion had grabbed [his] ass and squeezed it." Plaintiff asked Lenharth to place him in protective custody because he was afraid of being raped by Rambo. Lenharth

responded that if Plaintiff were not gay, that would not happen, and refused Plaintiff's request. Plaintiff asserted that he believed Lenharth knew Plaintiff was gay.

Plaintiff further alleged that on Monday, February 15, 2016, he sent a letter by institutional mail to Defendant Jerome Fields, requesting protective custody because he feared Rambo was going to rape him. He did not receive a reply from Fields, and was not placed in protective custody. It is undisputed that on February 18, 2016, Rambo sexually assaulted Plaintiff. Plaintiff alleged that at the time, he resided in a cell in the Medical Dorm of the jail. That night he wrote another letter to Fields, this time telling him about the assault. The next day, February 19, 2016, Plaintiff spoke with a psychologist whom Fields sent to talk to Plaintiff about the assault and to an investigator from the jail's internal affairs division.

Plaintiff filed this action on August 3, 2016, seeking $750,000 in damages from Defendants in their individual capacities for violation of his Eighth and Fourteenth Amendment rights in failing to protect him from the known danger of being sexually assaulted. Defendants argue that they are entitled to summary judgment because (1) Plaintiff cannot establish they were aware of facts from which they could infer the existence of a substantial risk of serious harm to Plaintiff, and Defendants did not draw such an inference; (2) they are entitled to qualified immunity because their conduct comported with established law; and (3) Plaintiff failed to exhaust his administrative remedies, in accordance with the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), by not timely filing an Informal Resolution Request ("IRR").

More specifically, with respect to Lenharth, Defendants submit a copy of the jail Sign-In Roster for February 11, 2016, that shows that Lenharth was assigned to the second floor of the jail, while from February 9 to February 22, 2016, Plaintiff resided in the Medical Dorm, located on the first floor. Defendants assert that due to his assignment on the second floor, Lenharth would have had no interaction with inmates in the Medical Dorm. With respect to Fields, Defendants point to Fields's deposition testimony that he never got a letter from Plaintiff. Fields became aware that Plaintiff was sexually assaulted because Delores Shaw, a case worker at the jail, told Fields she received a hand-written note from Plaintiff on February 19, 2016, describing the sexual assault. Upon notification by Shaw, Fields instructed that an investigation be conducted. Each Defendant attested by affidavit that Plaintiff did not inform him that he (Plaintiff) was afraid of being raped by Rambo, and did not request protective custody. Defendants also rely on Plaintiff's response during his deposition (taken before Plaintiff was appointed counsel) to the question of how he knew Defendants drew an inference of a substantial risk of harm to Plaintiff: "Like I say, I don't know if they did or not 'cause they never acted on it."

Defendants' qualified immunity argument is likewise based on their assertion that they were not aware of any facts from which they could infer the existence of a substantial risk of harm to Plaintiff before the assault. In support of their failure-to-exhaust argument, Defendants submit the affidavit of Scott Weber, the jail employee who received, reviewed, and responded to inmate grievances during the time in question. He attests that he had no record or recollection of any IRRs, grievances, or emergency grievances filed by Plaintiff regarding threats of sexual assault. Defendants also submit the grievance procedures in

3

place at the jail. These procedures provide that all IRRs and grievances must include, among other things, a brief statement of the facts of the incident at issue, and the "name of staff person involved or notified and how the inmate was affected." EFC No. 38-3.

In response (prepared with the assistance of appointed counsel), Plaintiff submits his declaration (ECF No. 51-1), attesting to the facts set forth in the complaint, as described above, and argues that summary judgment is precluded by the presence of genuine issues of fact with respect to whether Plaintiff told Defendants about his fears and requested protective custody. To his allegations in the complaint, he adds that on the night of the assault, there were no locks on his cell door in the Medical Dorm and Rambo was able to freely enter his room.

Plaintiff also declares that on the night of February 18, 2016, he wrote an "Emergency Grievance," and printed those words on the outside envelope, and gave it to "Officer Anderson" at the jail, who told him he would put it into the IRR box. Plaintiff submits a copy of this grievance, which describes the assault and asks for an investigation, including into why Rambo, against whom Plaintiff wished to file sexual abuse charges, was in Plaintiff's cell "without official staff knowledge." ECF 51-1 at 8-9. It does not mention Defendants or that Plaintiff told them (or anyone else) about his fears and requested protective custody before the assault. Petitioner states that he never received a response to his Emergency Grievance, and further, that on February 24, 2016, he asked a case worker at the jail for an IRR form. He waited two days, and then wrote a handwritten IRR in which he explained "the same thing I explained in my Emergency Grievance." He

addressed it to Weber, placed in in the IRR box, and saw Weber remove it the next day.  He never got a response to the IRR, and after 150 days, decided to file the present lawsuit.

Defendants submit in reply a copy of a form showing that Anderson was at training from 8:00 a.m. to 5:00 p.m. on February 18, 2016, and thus could not have been at the jail when Plaintiff allegedly gave him an Emergency Grievance.  They also submit an affidavit by Shaw in which she attests that she does not recall any interaction with Plaintiff on February 24, 2016, and does not give out IRR forms to inmates.  Thus, Defendants argue, the record shows that Plaintiff did not initiate or complete the grievance process.  Therefore, they contend, their motion for summary judgment should be granted.

## DISCUSSION

### Summary Judgment Standard

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be entered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  In ruling on a motion for summary judgment, a court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the record.  *Sokol & Assocs., Inc. v. Techsonic Indus., Inc.*, 495 F.3d 605, 610 (8th Cir. 2007).

To be a material fact, the factual issue must potentially "affect the outcome of the suit under the governing law."  *Id.* (citation omitted).  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that

5

party's case, and on which that party will bear the burden of proof at trial." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "[T]he burden of demonstrating that there are no genuine issues of material fact rests on the moving party," and the court must view "the evidence and the inferences that may be reasonably drawn therefrom in the light most favorable to the non-moving party." *Allard v. Baldwin*, 779 F.3d 768, 770 (8th Cir. 2015).

**Failure to Protect Claim**

As a pre-trial detainee, Plaintiff's claims arise under the Fourteenth Amendment, but the elements of his claim and standards applied are similar to those of an Eighth Amendment claim asserting cruel and unusual punishment due to prisoner officials' failure to protect an inmate from harm by another inmate. *Walton v. Dawson*, 752 F.3d 1109, 1118 (8th Cir. 2014). "There is no doubt the right at issue—a pretrial detainee's right to be protected from sexual assault by another inmate—is clearly established. It is equally beyond dispute that sexual assault at the hands of other prisoners is . . . sufficiently serious to amount to a deprivation of constitutional dimension." *Id.*; *see also Bloomer v. Mo. Dep't of Corr.*, No. 1:15CV174 RLW, 2017 WL 3129757, at *3 (E.D. Mo. July 21, 2017).

> A failure-to-protect claim has an objective component, whether there was a substantial risk of harm to the inmate, and a subjective component, whether the prison official was deliberately indifferent to that risk. To be liable, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Jones v. Wallace*, 641 F. App'x 665, 666 (8th Cir. 2016) (citations omitted). An inmate "need not show that a prison official acted or failed to act believing that harm actually

6

would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Nelson v. Shuffman*, 603 F.3d 439, 447 (8th Cir. 2010) (citation omitted).

Here, upon review of the record before the Court, the Court concludes that taking the facts in the light most favorable to Plaintiff, a reasonable juror could find that Defendants knew of the risk of harm to Plaintiff, and failed to respond reasonably to that risk. *See Walker v. Baker*, No. 4:13 CV 2498 CDP, 2016 WL 4528933, at *2 (E.D. Mo. Aug. 30, 2016) (denying prison officials summary judgment on a failure to protect claim where it remained disputed as to whether the plaintiff told the defendants he felt threatened by another inmate who later assaulted him, even though the plaintiff did not specifically ask for protective custody); *cf. Hymes v. Warren*, No. 4:14-CV-000485-SPM, 2016 WL 160642, at *4 (E.D. Mo. Jan. 14, 2016) (granting jail officials summary judgment on failure to protect claim where there was insufficient evidence for a reasonable jury to find that they were subjectively aware of a substantial risk to the plaintiff, because, among other things, the plaintiff never reported to any of the defendants that he felt he was in danger or that he wanted to be placed in protective custody). Accordingly, Defendants are not entitled to summary judgment on the merits of Plaintiff's claim; nor are they entitled to qualified immunity as it was clearly established at the time of the events in this case that jail officials must take reasonable measures to guarantee the safety of inmates. *See Walker*, 2016 WL 4528933, at *4.

**Exhaustion of Administrative Remedies**

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This applies to constitutional claims based on isolated incidents, as involved in the present case. *See Foulk v. Charrier*, 262 F.3d 687, 695 (8th Cir. 2001). Exhaustion is mandatory, but failure to exhaust is an affirmative defense, and the defendants have the burden of proving non-exhaustion. *Jones v. Bock*, 549 U.S. 199 (2007); *Porter v. Sturm*, 781 F.3d 448, 451 (8th Cir. 2015).

In *Jones*, the Supreme Court explained that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 219 (holding that as the relevant prison system's procedures made no mention of naming particular officials, imposing such a prerequisite to proper exhaustion was unwarranted).

Here, there are disputed facts as to whether Plaintiff submitted his Emergency Grievance to Anderson and/or placed a subsequent grievance consisting of the "the same thing [he] explained in [his] Emergency Grievance" in the IRR box. But even had he done either of these things, the grievance was not sufficient to satisfy Plaintiff's exhaustion requirement with respect to this lawsuit because, as noted above, it did not mention that he had told Defendants, or anyone, before the assault that he feared Rambo would rape him and that he wanted to be placed in protective custody; it wasn't focused on anyone other than the

8

individual who assaulted him   And, as also noted above, the applicable grievance procedures required such information.  *See, e.g., Burns v. Eaton*, 752 F.3d 1136 (8th Cir. 2014) (affirming the dismissal of claim as not exhausted where the prison "was not asked to evaluate the [the defendant] or the distinct § 1983 claims first asserted" by the prisoner in the lawsuit).   In sum, Plaintiff's complaint must be dismissed without prejudice for failure to exhaust his administrative remedies.  *See, e.g., Blair v Terry*, No. 6:15-03532-CV-S-RK, 2017 WL 6273084, at *11 (W.D. Mo. Dec. 8, 2017).

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the motion of Defendants Jerome Fields and Keith Lenharth for summary judgment on the merits is **DENIED**, but the complaint is **DISMISSED** without prejudice due to Plaintiff's failure to exhaust his administrative remedies as required by the Prison Litigation Reform Act.   (ECF No. 37.)

A separate Order of Dismissal will accompany this Memorandum and Order.

AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 28th day of December, 2017.